UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at Covington

| | | |
|---|---|---|
| RICARDO PEREZ RAMIREZ, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 2:25-cv-00156-SCM |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| RUSSELL HOLT, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Ricardo Perez Ramirez is a noncitizen who has been detained without bond by the Department of Homeland Security while he is undergoing removal proceedings. He has filed a petition for a writ of habeas corpus on the ground that it is unlawful for DHS to detain him without a bond hearing.  But he is not entitled to a bond hearing.  To the contrary, the applicable statutory language provides that he "shall be detained" during removal proceedings.  8 U.S.C. § 1225(b)(2)(A).  Accordingly, his habeas petition is denied.

## I.    Facts

The Petitioner, Ricardo Perez Ramirez, is a Mexican citizen who "entered the United States without inspection in 2005." [Dkt. 1 at 6].  He was apprehended and detained by United States Immigration and Customs Enforcement on September 2, 2025, and was served with a Notice to Appear charging him with removability due to entering the United States without inspection.  [*Id.*].  He is currently detained at the

Campbell County Detention Center in Newport, Kentucky. [*Id.*]. In his ongoing removal proceedings, the Petitioner seeks cancellation of his removal and a bond hearing. [*Id.*]. Pursuant to the Board of Immigration Appeals' ruling in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), a bond hearing has not been provided to the Petitioner. [*See id.* at 6–7].

The Petitioner filed his Petition for a Writ of Habeas Corpus on October 15, 2025. [*Id.* at 1]. The Respondents include Russell Hott as Field Office Director for ICE's Chicago office,[1] Kristi Noem as Secretary of DHS, Pamela Bondi as United States Attorney General, Todd M. Lyons as Acting Director of ICE, and James Daley as Jailer of the Campbell County Detention Center. [*Id.* at 5]. The Petitioner argues that his detention without bond violates the Immigration and Nationality Act and his right to due process under the Fifth Amendment. [*Id.* at 19–20]. According to the Petitioner, his detention is governed by 8 U.S.C. § 1226(a) instead of 8 U.S.C. § 1225(b), meaning he is entitled to a bond hearing. [*Id.* at 3]. Thus, he seeks relief through a writ of habeas corpus, which "is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). And he asks this Court to reject *Yajure Hurtado*'s interpretation of the INA, agree with those courts that have found detention like his to be unlawful, and endorse his understanding of the INA. [Dkt. 4 at 7–8]. He requests immediate release from federal custody or, alternatively, a prompt bond hearing. [Dkt. 1 at 21].

After Responses and a Reply were filed, the Petitioner submitted a Notice of

---

[1] Russell Hott's last name was misspelled in the Complaint as "Holt," hence the misspelled caption of this case. [Dkt. 3 at 1 n.1].

Supplemental Authority, [Dkt. 10], arguing that he is a member of the nationwide class in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025) (granting class certification). *See also* No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025) (reconsidering the Nov. 25, 2025 order and granting partial summary judgment). In that case, the Central District of California purported to certify a nationwide class of all detained noncitizens who lack lawful status and who: "(1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Id.* at \*32. That court also declared DHS's new policy of mandatory detention under § 1225(b)(2) to be unlawful. *See id.*

## II.  Analysis

This case boils down to one question: Is the Petitioner's detention governed by 8 U.S.C. § 1225(b)(2), which would preclude him from receiving a bond hearing, or is it governed by 8 U.S.C. § 1226(a), which would allow a bond hearing?

This question has arisen in numerous cases nationwide due to the BIA's determination in 2025 that all aliens who have not been admitted into the country must be detained without bond "unless an immigration officer determines that they are 'clearly and beyond a doubt entitled to be admitted.'" *Yajure Hurtado*, 29 I. & N. Dec. at 228 (quoting 8 U.S.C. § 1225(b)(2)(A)). Following that decision, DHS began detaining aliens situated similarly to the Petitioner without bond hearings. This

signaled a shift in practice. Previously, aliens who were present in the United States without admission and who were apprehended within the United States generally were given a bond hearing pursuant to 8 U.S.C. § 1226(a). But now, during the Petitioner's present detention, the BIA's more recent interpretation of the INA in *Yajure Hurtado* has prevented him from receiving a bond hearing. As explained above, the Petitioner argues that his detention without bond is unlawful. He believes the prior agency practice reflects the correct interpretation of the INA. To the contrary, a straightforward application of the plain language of the relevant statute compels the conclusion that he must be detained during his removal proceedings. Thus, he is not entitled to a bond hearing. *See Singh v. Noem*, No. 2:25-cv-00157-SCM, 2026 WL 74558 (E.D. Ky. Jan. 9, 2026).

### A. Section 1225(b)(2) applies to the Petitioner, thereby making him subject to mandatory detention.

The two statutes that potentially govern the Petitioner's detention are 8 U.S.C. § 1225(b)(2) and 8 U.S.C. § 1226(a). In relevant part, § 1225(b)(2)(A) provides:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

And § 1226(a), in relevant part, provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1)    may continue to detain the arrested alien; and
>
> (2)    may release the alien on—

4

> (A)     bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B)     conditional parole . . . .

The scope of the two statutes is obviously different. Section 1226(a) potentially applies to any alien who is arrested on a warrant issued for removal proceedings. Section 1225(b)(2), however, is narrower. It applies to a smaller subset of aliens who are "applicant[s] for admission." *Id.* § 1225(b)(2). Thus, the key here is determining whether the Petitioner is an "applicant for admission." If so, his detention is governed by § 1225(b)(2). If not, it is governed by § 1226(a), which would allow for a bond hearing.

The term "applicant for admission" is a term of art. It is not limited solely to those aliens who have literally submitted an application for admission. Rather, § 1225(a)(1) specifies that:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

And the term "admitted" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). So an "applicant for admission" is any alien who is either literally applying for admission or else is present in the United States without having received permission to be here.

In this case, the Petitioner concedes that he falls within the latter group, [Dkt. 1 at 6; Dkt. 4 at 3], so he is unquestionably deemed an "applicant for admission" under

§ 1225(a)(1). This point is dispositive. Because he is an "applicant for admission," § 1225(b)(2)(A) requires that he "shall be detained" during his removal proceedings if an immigration officer determines that he "is not clearly and beyond a doubt entitled to be admitted." And the record makes clear that this has happened here. Under the INA, an immigration officer is "any employee or class of employees of the [INS] or of the United States designated by the Attorney General . . . to perform the functions of an immigration officer." 8 U.S.C. § 1101(a)(18); *see also Montoya Cabanas v. Bondi*, No. 4:25-cv-04830, 2025 WL 3171331, at *7 (S.D. Tex. Nov. 13, 2025). Implementing regulations extend the definition to detention and deportation officers. 8 C.F.R. § 1.2. Here, an ICE supervisory detention and deportation officer examined the Petitioner's case and issued him a Notice to Appear charging him with removability, which necessarily means that the officer determined the Petitioner is not clearly and beyond a doubt entitled to be admitted.[2] [Dkt. 3-1 at 2 (incorporated into Petition by reference at Dkt. 1 at 6)[3]]; *see also Singh v. Noem*, No. Civ 25-1110 JB/KK, 2026 WL 146005, at *35 (D.N.M. Jan. 20, 2026) (holding that the facts of the case showed that an immigration officer had determined that the petitioner was not clearly and beyond a doubt entitled to be admitted).

For these reasons, § 1225(b)(2)(A) requires that the Petitioner be subject to

---

[2] If an immigration officer had determined that the Petitioner was clearly and beyond a doubt entitled to be admitted to the United States, then he would have been admitted and the Notice to Appear would not have been issued to commence a removal proceeding.

[3] The Petition notes that the Petitioner's Notice to Appear is attached as Exhibit B. [Dkt. 1 at 6]. However, the Petition lacks any Exhibits other than the Civil Cover Sheet. [Dkt. 1-1].

mandatory detention.  The plain language of the statute permits no other conclusion. Nevertheless, the Petitioner resists this straightforward application of the statute on several grounds, each of which is unavailing.

### 1. Mandatory detention under § 1225(b)(2)(A) is not limited to "arriving" aliens.

The Petitioner claims that § 1225(b)(2)(A) applies only to aliens who are "arriving" in the United States, not those who have been here for years, as he has. This argument is belied by the plain language of § 1225.  To be sure, § 1225(b)(1) applies to aliens who are "arriving" in the United States for the first time.  *See id.* § 1225(b)(1)(A)(i) ("If an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible . . ., the officer shall order the alien removed from the United States . . . .").  But § 1225(b)(2)(A) is the section that requires the Petitioner to be detained.  And nothing in § 1225(b)(2)(A) limits its applicability to "arriving" aliens.   In fact, the word "arriving" does not even appear in § 1225(b)(2)(A).  As other courts have recognized, § 1225(b)(1) applies to "arriving aliens," but § 1225(b)(2) is a "catchall" provision that applies to all other aliens who have not been granted admission to the country.  *See Mejia Olalde v. Noem*, No. 1:25-CV-00168-JMD, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018)).  The Petitioner falls within the latter group, so § 1225(b)(2) applies to him.

Nevertheless, the Petitioner points to the fact that § 1225 carries the following title:  "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  He contends that the presence of the word "arriving" in

the title means that § 1225 can apply only to those aliens who are arriving, not those who are already present in the country.  [Dkt. 1 at 11].  Not so.

It is true that the title of a statutory section can be a tool "'for the resolution of a doubt' about the meaning of a statute." *Dubin v. United States*, 599 U.S. 110, 121 (2023) (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998)); *see also* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 221–24 (2012) (explaining the appropriate role of titles in determining the meaning of statutes).  But here there is no doubt to be resolved.  The meaning of § 1225's text is plain.  And in no case can a title "undo or limit that which the text makes plain." *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R.*, 331 U.S. 519, 529 (1947); *see also* Scalia & Garner, *supra*, at 222 ("[A] title or heading should never be allowed to override the plain words of a text.").

Finally, the Petitioner points to the fact that § 1225(b)(2)(C) and the heading for that subsection contain the word "arriving."  This is irrelevant because § 1225(b)(2)(A), not § 1225(b)(2)(C), is the applicable provision here.  And the word "arriving" appears nowhere in § 1225(b)(2)(A).  Moreover, even if the subsection headings were relevant—which they are not in light of the fact that there is no ambiguity in the statute—they would *disprove* the Petitioner's argument.  After all, the heading for § 1225(b)(1) indicates that it applies to the "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled," while the heading for § 1225(b)(2) indicates that it applies to the "Inspection of *other aliens*." (emphasis added).  Thus, the headings for § 1225(b)(1) and (b)(2)

indicate that the former applies to arriving aliens (and a narrow category of other aliens who can be treated as arriving aliens), while the latter applies to "other aliens," which would include the Petitioner here.

### 2.   The Petitioner is "seeking admission."

Next, seizing on the language in the second clause of § 1225(b)(2)(A), the Petitioner contends that mandatory detention under § 1225(b)(2)(A) cannot apply to him because he is not "seeking admission."  In other words, the Petitioner argues that § 1225(b)(2)(A) does not apply to all aliens who are "applicant[s] for admission," but instead applies only to those aliens who are "applicant[s] for admission" *and* who are also "seeking admission."  His argument, however, misreads the statutory text.  The "seeking admission" language is not additional limiting language.  It does not further narrow the class of aliens to whom § 1225(b)(2)(A) applies beyond those who are "applicant[s] for admission."

The Petitioner's argument would be compelling if the statutory language said that § 1225(b)(2)(A) applies "in the case of an alien who is an applicant for admission *and who is also seeking admission*."  But the statute says nothing of the sort.  Instead, it simply says that the statute applies "in the case of an alien who is an applicant for admission," *id.* § 1225(b)(2)(A), which the Petitioner plainly is.

Similarly, the Petitioner's argument would be compelling if the statutory text said that detention is mandatory "if the examining immigration officer determines that an alien *is* seeking admission *and also* is not clearly and beyond a doubt entitled to be admitted."  But, again, the statute says nothing of the sort.  The statute does

9

not require the immigration officer to make *both* a determination that the alien in question is seeking admission *and* a determination that the alien is not clearly and beyond a doubt entitled to be admitted. Instead, it requires only a determination that the alien "is not clearly and beyond a doubt entitled to be admitted." *Id.* § 1225(b)(2)(A). The placement of the word "is" clearly demonstrates that the determination being made by the immigration officer concerns nothing more than the alien's entitlement to be admitted. Thus, the phrase "seeking admission" does not pertain to any element that must be found by the immigration officer before mandatory detention applies.

Rather than interpreting the "seeking admission" language as a separate requirement that must be met for § 1225(b)(2)(A) to apply, the more natural and logical reading is to view it as an appositive for the "applicant for admission" language. That is, the phrase "alien seeking admission" is simply another way of identifying the "alien who is an applicant for admission." This is the most rational interpretation not only because—as explained above—the statutory text contains no language establishing those two clauses as independent requirements, but also because it makes no sense to think of an "applicant for admission" as anyone other than a person who is "seeking admission." What else would an applicant for admission be doing if not seeking admission? After all, "[t]o 'seek' is a synonym of to 'apply' for." *Mejia Olalde*, 2025 WL 3131942, at *3. Thus, one who is an "applicant for admission" is, by definition, "seeking admission." This means that because the Petitioner is deemed to be an "applicant for admission," he is likewise deemed to be

"seeking admission."

Consider also the implications of the Petitioner's argument. If he is correct, then that means aliens who are present in the country without permission will be treated more favorably if they decline to take any measures to obtain permission than if they actively seek out permission to remain here. Those who refuse to do anything that would constitute "seeking admission" in the Petitioner's view would not be subject to mandatory detention, while those who do seek permission to stay in the United States would be subject to mandatory detention. That makes no sense. Rather, finding that the Petitioner falls within § 1225(b)(2)(A) is more consistent with the plain text of the statute and the goals of the INA.

### 3. Applying § 1225(b)(2)(A)'s mandatory-detention provision to the Petitioner does not render § 1226(c) or the recent Laken Riley Act superfluous.

The Petitioner contends that the Court's interpretation of § 1225(b)(2)(A) renders 8 U.S.C. § 1226(c) and the recent Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), superfluous. This argument is also incorrect.

Section 1226(c) requires detention for noncitizens who have committed certain crimes or who have been involved in terrorist activities. The Laken Riley Act amended § 1226(c) in 2025 by adding new categories of criminal noncitizens to § 1226(c)'s detention provisions. Specifically, the Laken Riley Act amends § 1226(c) to require detention by the federal government (the "Government") for aliens who are present in the country without having been admitted and who have committed certain state crimes. § 2, 139 Stat. at 3. The Petitioner claims that § 1226(a) and § 1226(c) together prove his case. He points out that § 1226(a) states that aliens who

11

fall under § 1226(c) are not eligible to be released on bond. Thus, according to the Petitioner, the import of § 1226(c)—and its amendment by the Laken Riley Act—is to subject certain unadmitted aliens to mandatory detention without bond. This means—in his view—that unadmitted aliens were not already subject to mandatory detention under § 1225(b)(2)(A). Otherwise, according to the Petitioner, there would be no point to § 1226(c)—or the Laken Riley Act, for that matter—because the unadmitted aliens who fall within its provisions would have already been subject to mandatory detention. In the Petitioner's view, then, § 1226(c) cannot be given independent meaning unless the unadmitted aliens to whom it applies were not already subject to mandatory detention under § 1225(b)(2)(A). The Petitioner's view, however, represents a fundamental misunderstanding of § 1226(c) and the Laken Riley Act.

The critical point as to § 1226(c)—and the portion of the Laken Riley Act that amends it—is that it does not merely require detention. Instead, it requires detention immediately upon a covered alien's release from custody on the underlying offense. *See* 8 U.S.C. § 1226(c)(1); *see also* § 2, 139 Stat. at 3. Specifically, § 1226(c)(1) provides that "[t]he Attorney General shall take into custody" a covered alien "*when* the alien is released . . . ." (emphasis added). Thus, it contains a temporal component that is missing from § 1225(b)(2)(A). Stated differently, § 1226(c) and the Laken Riley Act do not mandate the detention of aliens who otherwise would *not* be subject to mandatory detention, but instead they mandate the *timing* of the detention of certain aliens. They specify *when* certain aliens are to be detained, not merely that they must

12

be detained.  In this respect, § 1226(c) and the Laken Riley Act "add[] something that Section 1225(b)(2)(A) lacks."  *Gomez Hernandez v. Lyons*, No. 1:25-CV-216-H, 2026 WL 31775, at *7 (N.D. Tex. Jan. 6, 2026); *see also Coronado v. Sec'y, Dep't of Homeland Sec.*, No. 1:25-cv-831, 2025 WL 3628229, at *11 (S.D. Ohio Dec. 15, 2025) (explaining the different obligations imposed by § 1226(c) and § 1225(b)(2)).  Thus, properly understood, § 1226(c) and the Laken Riley Act are about the *timing* of detention.  *See Coronado*, 2025 WL 3628229 at *11 ("While admittedly overlapping in some sense, the two provisions impose different obligations as to initiating custody, and thus this reading of § 1226(c) does not render § 1225(b)(2) surplusage."); *see also Gomez Hernandez*, 2026 WL 31775, at *7 (The Laken Riley Act "regulates when the Attorney General must take aliens into custody" and provides "a temporal gloss on the Executive's detention authority" in light of the fact that § 1225(b) "does not include a timeline.").

The following hypothetical illustrates this point:  John Doe is an alien who entered the country without permission, and while he is in the country, he is convicted of a burglary, which is one of the predicate offenses for application of the Laken Riley Act.  8 U.S.C. § 1226(c)(1)(E)(ii).  Before the Laken Riley Act, he could have simply been released from custody after serving his sentence for the burglary; such was the practice at the time.  *See Coronado*, 2025 WL 3628229, at *11.  The correct interpretation of § 1225(b)(2)(A) would have required Doe to be detained if and when removal proceedings were initiated against him, but nothing would have prevented him from being released from state custody after serving his time for the

burglary.  After the Laken Riley Act, however, it is now mandatory that he be taken into custody by federal authorities "when [he] is released" from detention on the burglary.  8 U.S.C. § 1226(c)(1).  Thus, the Laken Riley Act simply filled in a gap that previously allowed removable aliens to be released from state or local custody and go back to living amongst the country's general population after having committed certain crimes.  Now, in the wake of that Act, aliens like the hypothetical John Doe must go straight into federal custody after being released from state or local custody.  This has nothing to do with the mandatory-detention provision under § 1225(b)(2)(A), much less is it pointlessly redundant of that provision.  In short, this all means that § 1226(c) and the Laken Riley Act can be given independent meaning and that the Court's interpretation of § 1225(b)(2)(A) does not render them superfluous.

But even if § 1225(b)(2)(A) and § 1226(c) are in some sense overlapping, the canon against superfluity—like all canons of interpretation—is a guide, not an inexorable command.  *See Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019) ("Redundancy is not a silver bullet.").  It is true that the canon against superfluity "applies to interpreting any two provisions in the U.S. Code, even when Congress enacted the provisions at different times," *Bilski v. Kappos*, 561 U.S. 594, 608 (2010), but it is "weak when applied to acts of Congress enacted at widely separated times," as is the case here.  *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 373 (3d Cir. 1999); *see also Coronado*, 2025 WL 3628229, at *11 (noting the nearly 30-year gap between enactment of § 1225(b)(2) and the Laken Riley Act).  And even when statutory provisions *could* be redundant, "[s]ometimes the better overall

14

reading of the statute contains some redundancy." *Rimini St.*, 586 U.S. at 346. Such is the case here to the extent there is any redundancy. After all, nothing prevents Congress from "employ[ing] a belt and suspenders approach." *Atl. Richfield Co. v. Christian*, 590 U.S. 1, 14 n.5 (2020).

### 4. The novelty of the Government's interpretation and enforcement of § 1225(b)(2)(A) does not make it incorrect.

Finally, a common theme running throughout the Petitioner's arguments is the suggestion that the Government's interpretation of § 1225(b)(2)(A) cannot be correct because the law has never been enforced that way before. It might be true that the Government has not previously interpreted and enforced §§ 1225 and 1226 the way it is now, but that does not mean the Government is wrong. To the contrary, it appears that the Government previously interpreted and enforced the law incorrectly, and it has now corrected its prior mistakes.

The Petitioner seems to suggest that the Government should be bound by its prior interpretation, or that an agency can effectively re-write a statute by enforcing it contrary to its plain language for a long time, much the way one can adversely possess property simply by acting as the owner for a long time. But that is not how things work. Estoppel generally does not apply to the Government when it comes to law enforcement. *See Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60–61 (1984) ("[I]t is well settled that the Government may not be estopped on the same terms as any other litigant" because public policy considerations let the Government alter its positions in ways private parties cannot.); *see also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (The Government may change its

15

interpretation of a statute when "the new policy is permissible under the statute," "there are good reasons for it," and "the agency *believes* it to be better."). And an agency cannot adversely possess the text of a statute. The Court's job is to interpret and apply the law as it was *written by Congress*, not as it was historically interpreted and enforced by agencies. Thus, while it might be factually true that the BIA and DHS have not previously interpreted the law as they do now, that point is legally irrelevant.

**B. The Petitioner's detention does not violate due process.**

The Petitioner contends that his detention violates his right to due process under the Fifth Amendment to the United States Constitution. It is true that aliens like the Petitioner have due process rights even though they are present in the country without ever having been admitted. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). However, their right to due process goes no further than the process Congress has chosen to give them. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138–39 (2020). Here, the Petitioner is receiving that process. Thus, he has no valid claim under the Fifth Amendment.

**C. The Court is not bound by *Maldonado Bautista*.**

In a last-ditch effort, the Petitioner argues that he is a member of the nationwide class in *Maldonado Bautista* and must be released on bond because of the declaratory and vacatur relief issued in that case. [Dkt. 10 at 1–2 (citing 2025 WL 3289861, at *11 (granting partial summary judgment), and 2025 WL 3288403, at *9 (certifying class))]. In *Maldonado Bautista*, the Central District of California

ultimately concluded that all individuals who entered the United States without inspection, the nationwide class, are subject to § 1226(a) and entitled to a bond hearing. 2025 WL 3713987, at *28–29, 32 (clarifying the court's prior orders that granted relief to the named petitioners and extended that relief to the entire class). So the Petitioner claims that the Central District's judgment binds this Court. But that ignores a few key points. First, the Central District made clear that it did not order "habeas relief for all class members across the nation." *Maldonado Bautista*, 2025 WL 3713987, at *29. And that court specifically acknowledged that it "cannot order nationwide release or bond hearings for Bond Eligible class members, especially so to those confined outside [the Central District of California]." *Id.* at *30. Additionally, the Central District held that "[t]o the extent Petitioners seek habeas relief for class members in immigration detention outside of this judicial district, the Court reiterates such an action would be *ultra vires*; there is no habeas jurisdiction to do so." *Id.* So the Central District of California plainly did not order any kind of relief that would bind this Court, which means that its opinions in *Maldonado Bautista* can have no more than persuasive authority. And because this Court finds those opinions unpersuasive, it declines to follow them.

## III. Conclusion

District Courts within this Circuit—and all over the nation—are wrestling with issues like those the Petitioner has raised. Indeed, another case in this District arrived at a different outcome after thorough analysis of a similar petition. *See Moyao Roman v. Olson*, No. 2:25-cv-169-DLB-CJS, 2025 WL 3268403 (E.D. Ky. Nov. 24,

2025).  While this Court appreciates the thoughtful and thorough analyses of the courts that have reached the opposite conclusion, it agrees with those that have been convinced that § 1225(b)(2)(A) compels mandatory detention for those noncitizens who are in the Petitioner's position.  *See, e.g., Singh*, 2026 WL 416005; *Gomez Hernandez*, 2026 WL 31775; *Coronado*, 2025 WL 3628229; *P.B. v. Bergami*, No. 3:25-CV-2978-O, 2025 WL 3632752 (N.D. Tex. Dec. 13, 2025); *Montoya Cabanas*, 2025 WL 3171331; *Altamirano Ramos v. Lyons*, No. 2:25-cv-09785-SVW-AJR, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025); *Mejia Olalde*, 2025 WL 3131942.[4]

For the foregoing reasons, Petitioner Perez Ramirez's Petition for a Writ of Habeas Corpus, [Dkt. 1], is hereby **DENIED**.[5]  A separate Judgment will be entered.

Signed this 28th day of January, 2026.



S. Chad Meredith, District Judge
United States District Court
Eastern District of Kentucky

---

[4] Many other district courts concur in well-reasoned opinions.  *See, e.g., Gallegos Rodriguez v. Noem*, No. 9:25-CV-320, 2025 WL 3639440 (E.D. Tex. Dec. 10, 2025); *Barrios Sandoval v. Acuna*, No. 6:25-CV-1467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025); *Vargas Lopez v. Trump*, No. 8:25CV526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Guadalupe Sixtos Chavez v. Noem*, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025).

[5] One of the Respondents in this matter, James Daley, contends that he is not a proper Respondent in this case because he is not the Petitioner's legal or immediate custodian.  [Dkt. 8 at 2–3].  The Petitioner does not oppose Daley's dismissal as a named Respondent, [Dkt. 9 at 2], but due to the Court's disposition of the Petition, it is not necessary for the Court to consider this issue.